T.C. Memo. 2011-7

UNITED STATES TAX COURT

ROGER W. AND SHARON L. ZARDO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23647-08.                    Filed January 10, 2011.

Roger W. and Sharon L. Zardo, pro se.

<u>Chong Hong</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  The Commissioner of Internal Revenue
issued a notice of deficiency for the tax year 2006 to Roger W.
and Sharon L. Zardo.  We refer to the Commissioner here as the
IRS.  In the notice, the IRS determined an income-tax deficiency
of $5,862, a late-filing penalty of $71 under section

6651(a)(1),[1] and an accuracy-related penalty of $1,172 under section 6662(a). The IRS has conceded that the Zardos are not liable for the late-filing penalty and the accuracy-related penalty. The primary issue remaining for decision is whether $26,365 of disability retirement benefits from an employer pension plan is included in income. We hold that it is. The other issues are computational and will be resolved under Rule 155. These issues are: (1) how much of the $23,742 of Social Security disability benefits is included in income, and (2) to what extent the Zardos are entitled to a $2,152 medical-expense deduction.

## Background

We adopt the stipulation of facts and its attached exhibits. The Zardos filed their 2006 income-tax return on May 3, 2007. They resided in California when they filed their petition.

Roger W. Zardo (Zardo) worked as a meat cutter for Nob Hill Foods, a grocery store, from July 28, 1984 until June 3, 2003. Nob Hill Foods contributed to the United Food and Commercial Workers Northern California Employers Joint Pension Plan (the UFCW Pension Plan). The UFCW Pension Plan was the result of collective bargaining agreements between participating employers

---

[1]All section references are to the Internal Revenue Code as in effect for the year at issue. All references to regulations are to those in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

and participating UFCW local unions.  Under the UFCW Pension Plan, Zardo was potentially eligible for a variety of benefits, including disability retirement benefits.  Zardo could receive disability retirement benefits if:  (1) he was eligible for Social Security disability benefits, (2) he was under age 60, (3) the disability began after he had worked a certain amount of time,[2] and (4) he was still employed at the end of the plan year before the disability began.  The amount of disability retirement benefits was based solely on the number of years Zardo had worked (and for which plan contributions were made) and the benefit factor associated with each year.  Zardo's employer made all plan contributions on his behalf, and the employer's contributions were not included in Zardo's gross income.

During the course of his employment, Zardo incurred injuries that impaired the functioning of his back, right knee, and right shoulder.  Although he received treatment for these injuries, he could no longer work after June 3, 2003.  Starting December 1, 2003, Zardo received a monthly disability retirement benefit of $2,197.09 from the UFCW Pension Plan.  During 2006, Zardo

---

[2]To be eligible for disability retirement benefits, employees had to accumulate at least 10 years of vesting credit or 8,000 hours of service over a 10-year period in which they worked at least 150 hours each year.  Employees received 1 year of vesting credit if they worked at least 750 hours in a year.  They received partial vesting credit if they worked at least 150 hours in a year.  Partial vesting credit was determined by dividing an employee's hours of service by 2,000.

received a total of $26,365.08 in benefits from the UFCW Pension Plan, as reflected in his Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

In addition to the disability pension benefits, Zardo received workers' compensation payments and Social Security disability insurance benefits. Zardo received $41,529.97 in workers' compensation for temporary disability for the periods April 6 to 15, 2001, and June 4, 2003 to September 20, 2004. Zardo was also awarded $58,136.25 in workers' compensation for permanent disability under a stipulation filed with the State of California Workers' Compensation Appeals Board on December 19, 2006. Zardo was granted Social Security disability insurance benefits under a July 12, 2005 notice of decision issued by the Social Security Administration. The notice of decision determined that Zardo had residual functional capacity for a full range of light work as of April 29, 2005, but that he was unable to resume his past work and had not "acquired work skills transferable to work within his remaining functional capacity". In 2006, Zardo received Social Security disability insurance benefits totaling $23,742, as shown on his Form SSA-1099, Social Security Benefit Statement.

The Zardos' 2006 income-tax return excluded from gross income all $26,365 of the UFCW Pension Plan disability retirement

benefits and $13,447 of the Social Security disability benefits. A statement attached to the tax return cited section 104(a)(2) as the authority for excluding the UFCW Pension Plan disability retirement benefits. The Zardos also claimed a medical-expense deduction of $2,152. The IRS adjusted the Zardos' gross income to include all $26,365 of the UFCW Pension Plan disability retirement benefits and $9,886 in Social Security disability benefits that were not included on the return. The IRS disallowed the entire medical-expense deduction. The adjustments concerning the Social Security disability benefits and the medical-expense deduction were purely computational and were based on the increase in adjusted gross income after including the UFCW Pension Plan disability retirement benefits.

## Discussion

The Zardos bear the burden of proving the IRS's determination of deficiencies incorrect. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Because the IRS disallowed their exclusion of the UFCW Pension Plan disability retirement benefits, the Zardos bear the burden of proving they are entitled to the claimed exclusion.[3] We consider whether the

---

[3]Under some circumstances, sec. 7491(a) shifts the burden of proof to the IRS. The Zardos have neither argued, nor adduced evidence, that the conditions of sec. 7491(a) have been met. Thus, the burden of proof has not shifted to the IRS on any issue. Even if the burden of proof had shifted, we do not believe it would change the outcome of the case.

Zardos can exclude the UFCW Pension Plan disability retirement benefits under section 104(a)(1), section 104(a)(2), or section 105(c).

1.   <u>The Benefits Are Not Excludable Under Section 104(a)(1)</u>.

Section 104(a)(1) provides that gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness".  The section 104(a)(1) exclusion does not apply to benefits paid pursuant to a private contractual relationship.  <u>Wallace v. United States</u>, 139 F.3d 1165 (7th Cir. 1998).  Zardo's UFCW Pension Plan disability retirement benefits are not excludable under section 104(a)(1). Zardo received his benefits under a private collective bargaining agreement, not a statute.  We therefore reject the Zardos' argument that these benefits are essentially equivalent to workers' compensation.

2.   <u>The Benefits Are Not Excludable Under Section 104(a)(2)</u>.

Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness".  The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through "prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement

agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.

Zardo's UFCW Pension Plan disability retirement benefits are not excludable under section 104(a)(2). Zardo did not receive these payments through a legal suit or a settlement based on a tortlike claim. Zardo never sued or threatened to sue Nob Hill Foods or the UFCW Pension Plan regarding his work-related injuries. Instead Zardo received his disability retirement payments as a benefit of his previous employment with Nob Hill Foods. Without more information, we cannot conclude that Zardo's disability benefits were paid in lieu of a tort-based legal suit. See Cash v. Commissioner, T.C. Memo. 1994-166 (holding the Court could not automatically conclude that payments under an employer disability policy were made in lieu of a tort suit just because the taxpayer suffered a work-related injury). We thus reject the Zardos' assertion that section 104(a)(2) permits them to exclude the UFCW Pension Plan disability retirement benefits from gross income.

3.   The Benefits Are Not Excludable Under Section 105(c).

Under section 105(a), amounts received by an employee through accident or health insurance for personal injuries or sickness are included in gross income to the extent such amounts are (1) attributable to contributions by the employer which were not includable in the employee's gross income, or (2) paid by the

employer.  Amounts received under an accident or health plan[4] for employees are considered "amounts received through accident or health insurance" for the purposes of section 105.  Sec. 105(e). Section 1.105-1(b), Income Tax Regs., expressly includes within the scope of section 105(a) accident or health plans financed solely by the employer.

Section 105(c) provides that gross income does not include amounts referred to in section 105(a) to the extent they:

> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, * * * and

> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

For payments to be treated as "computed with reference to the nature of the injury", the payments that the plan is obliged to make must vary according to the type and severity of the injury. Beisler v. Commissioner, 814 F.2d 1304, 1308 (9th Cir. 1987) (en banc), affg. T.C. Memo. 1985-25; Rosen v. United States, 829 F.2d 506, 509 (4th Cir. 1987); Hines v. Commissioner, 72 T.C. 715, 720

---

[4]Sec. 1.105-5(a), Income Tax Regs., defines "an accident or health plan" as "an arrangement for the payment of amounts to employees in the event of personal injuries or sickness."  A plan can cover one or more employees and involve different plans for different employees or classes of employees.  Id.  The plan does not need to be in writing, and the employee's rights under the plan do not need to be enforceable.  Id.  It is also immaterial who pays the plan benefits.  Id.  Payments can be made by the employer, a separate fund, an association of employers or employees, or an insurance company.  Id.

(1979). This nature-of-the-injury requirement is not satisfied if the plan simply requires a threshold determination of disability before benefits can be paid. See Beisler v. Commissioner, supra at 1309; Rosen v. United States, supra at 510; Hines v. Commissioner, supra at 720. Congress intended section 105(c) to carve out an exception for payments not resembling income. See Beisler v. Commissioner, supra at 1308. If payments do not vary according to the nature of the injury, or if they vary according to absence from work, then they constitute compensation for lost wages and should be taxed. Id.

Zardo's UFCW Pension Plan disability retirement benefits are not excludable under section 105(c) because they fail to satisfy the section 105(c)(2) nature-of-the-injury requirement.[5] The UFCW Pension Plan calculated benefits solely according to the number of years Zardo worked and the benefit factor associated with each year. The amount of benefits did not vary according to the type or severity of the injury. The plan merely required a threshold determination of disability for benefits to be paid; the employee had to qualify for Social Security disability

---

[5]We express no opinion on whether the UFCW Pension Plan qualifies as an accident or health plan under sec. 105(e), whether Zardo received payments for the permanent loss of a bodily member or function under sec. 105(c)(1), or whether Zardo's payments were computed without regard to his absence from work under sec. 105(c)(2). Even if Zardo's benefits met all other requirements for the sec. 105(c) exclusion, they would still fail to satisfy the sec. 105(c)(2) nature-of-the-injury requirement.

benefits. The Zardos cite the dissenting opinion in the Court of Appeals for the Ninth Circuit case of <u>Beisler v. Commissioner</u>, <u>supra</u>, as authority for why the UFCW Pension Plan disability retirement benefits are excludable under section 105(c), but it is the majority opinion which constitutes precedent. Because the Zardos resided in California when they filed their petition, their case is appealable to the Ninth Circuit unless the parties stipulate otherwise. See sec. 7482(b). Therefore the <u>Beisler</u> majority opinion is binding precedent.[6] See <u>Campbell v. Commissioner</u>, 134 T.C. 20, 27 n.6 (2010) ("The Tax Court follows the law of the circuit in which an appeal would lie if that law is on point." (citing <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971))). Even if <u>Beisler</u> had not been decided, we are bound by <u>Hines v. Commissioner</u>, <u>supra</u> at 720, in which this Court came to the same conclusion as the <u>Beisler</u> majority.

In conclusion, Zardo's UFCW Pension Plan disability retirement benefits are not excludable under section 104(a)(1), section 104(a)(2), or section 105(c). We hold that the entire $26,365 of benefits received under the UFCW Pension Plan in 2006 should be included in the Zardos' gross income.

---

[6]In <u>Beisler v. Commissioner</u>, 814 F.2d 1304, 1308 (9th Cir. 1987) (en banc), affg. T.C. Memo. 1985-25, the court interpreted sec. 105(c)(2) to require the payments to vary according to the type and severity of the injury.

To reflect the foregoing,

Decision will be entered

under Rule 155.